IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLENE MCDONNELL, | ) |
| Plaintiff, | ) 2:20-CV-01060-CCW |
| v. | ) |
| KRG KINGS LLC., KELLY OPERATIONS GROUP, LLC., | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Before the Court is Plaintiffs' Motion for Final Certification of the Fair Labor Standards Act Collective.  *See* ECF No. 68.  Plaintiffs' Motion will be GRANTED.

**I.      Background**

Named Plaintiff Darlene McDonnell ("Ms. McDonnell") initiated this case as a hybrid class and collective action, asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act, 43 P.S. §§333.101, *et seq.* ("PMWA"), on behalf of herself and other similarly situated current and former employees of Defendants KRG Kings LLC and Kelly Operations Group, LLC.  *See* ECF No. 1.

In her Complaint, Ms. McDonnell alleges that she worked as a server at a Kings Family Restaurant in New Kensington, Pennsylvania, from 1991 to September 2019.  *See id.* ¶ 11.  During the period covered by the Complaint, Defendants owned and operated "between 16 and 23 restaurants in Pennsylvania under the 'Kings Family Restaurant' brand." *Id.* ¶ 8.  Defendants paid servers at their Kings Family Restaurants, like Ms. McDonnell, a sub-minimum wage of $3.45 an hour and claimed a "tip credit," as permitted under the FLSA and PMWA, of $3.80 an hour against tips servers received from customers.  *See id.* ¶ 13.  Among other requirements, the FLSA only

allows an employer to claim a "tip credit" for time an employee spends on (a) tip-generating work or (b) tasks directly related to tip-generating work (so long as those tasks do not exceed 20% of the employee's hours in a given workweek). *See id.* ¶ 28 (citing 29 C.F.R. § 531.56(e) and *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512 (E.D. Pa. 2019)). But, according to the Complaint, Defendants required Ms. McDonnell and other servers to perform side-work (i.e., non-tip generating work such as: "rolling silverware; washing dishes, cleaning the ice cream bar, taking used dishes from the dining room to the back of the Restaurant, bringing clean dishes from the back of the restaurant to the dining room, cutting fruit, and cleaning the restaurant") amounting to at least 30% of their working hours. *See id.* ¶ 14. Accordingly, the Complaint claims that Defendants violated their minimum wage obligations under the FLSA and PMWA.

After Defendants filed an Answer, the case proceeded into an initial phase of discovery related to Ms. McDonnell's then-contemplated motion for conditional certification of an FLSA collective, under 29 U.S.C. § 216(b). *See* ECF Nos. 14 & 23. Following that initial phase of discovery, the parties stipulated to conditional certification of an FLSA collective consisting of "[a]ll individuals who, during any week since July 16, 2017, have been employed as servers at Kings Family Restaurants and were paid an hourly wage below $7.25." ECF No. 27 at 3. In addition, the parties stipulated that,

> there is a factual nexus between the manner in which Defendants' alleged policy affected Plaintiff and Putative Collective Members. These common agreed to facts include, for example, Plaintiff and Putative Collective Members each worked as servers at King Family Restaurants, were classified as "tipped employees" for purposes of 29 U.S.C. § 203(m)(2), were paid an hourly wage below $7.25, may have performed some amount of side work as part of their employment, and were classified as employees covered by the FLSA's minimum wage and overtime premium pay provisions.

*Id.* at 2 (quoting ECF No. 26 at 3; ECF No. 26-1 at ¶ 2). Finally, the parties agreed that "Plaintiff will not pursue her Pennsylvania Minimum Wage Act … claim as a class action claim under

2

Federal Rule of Civil Procedure 23" but that "Plaintiff and any Putative Collective Members who join this case pursuant to 29 U.S.C. § 216(b) will continue to assert PMWA claims, and the limitations period applicable to such PMWA claims is tolled as of July 16, 2017." *Id.* (quoting ECF No. 26 at 1–2; ECF No. 26-1 at ¶¶ 3–4).

Following the Court-approved notice and opt-in period, *see id.* at 3, during which 405 individuals joined the collective action, the parties proceeded into a second phase of discovery, at the conclusion of which Plaintiffs filed their instant Motion for final certification of the collective. *See* ECF Nos. 53 & 68. Plaintiffs' Motion has been fully briefed and is, therefore, ripe for disposition.

**II.   Standard of Review**

Final certification of a collective action under the FLSA is only appropriate if "the proposed collective plaintiffs are 'similarly situated.'" *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (quoting 29 U.S.C. § 216(b) ("An action to recover the liability prescribed [by this statute]…may be maintained…by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.")). "'To be found similarly situated, members of the collective need not have an identical experience; complete symmetry of job functions is not required for final certification under the FLSA.'" *Rood v. R&R Express, Inc.*, No. 2:17-cv-1223-NR, 2021 U.S. Dist. LEXIS 132584, at *16 (W.D. Pa. July 16, 2021) (Ranjan, J.) (quoting *Carr v. Flowers Foods, Inc.*, No. 15-6391, 2019 U.S. Dist. LEXIS 77541, at *13 (E.D. Pa. May 7, 2019)). Nor must plaintiffs in an FLSA collective action satisfy the prerequisites of Federal Rule of Civil Procedure 23. *See Zavala*, 691 F.3d at 536 (rejecting "approaches [to final FLSA certification] derived from Rule 23"); *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.4 (3d Cir. 2007) (noting that by adopting the collective action device, Congress "impliedly

rejected the Rule 23 [opt-out] class action procedures") (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)).  Instead, § 216(b)'s "similarly situated" requirement imposes a different—and somewhat less burdensome—standard on plaintiffs to prevail on final certification. *See Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 131 (3d Cir. 2018) (finding that "Rule 23 class certification and FLSA collective action certification are fundamentally different creatures.") (*citing Myers v. Hertz Corp.*, 624 F.3d 537, 555–56 (2d Cir. 2010).  A group of plaintiffs must nevertheless meet this burden by a preponderance of the evidence.  *See Zavala*, 691 F.3d at 537.

      Courts in this Circuit apply the so-called "ad hoc" approach to determining whether the members of a proposed collective are similarly situated.  *See id.* at 536*.* ("We have already repeatedly approved the ad-hoc approach, and we do so again today.") (collecting cases).  This approach requires the district court "to consider[] all the relevant factors and makes a factual determination on a case-by-case basis." *Id.*  According to the Third Circuit, the factors a court should consider include, but are not limited to:  "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536–37.  Courts should also consider whether "the existence of individualized defenses" renders members of a proposed collective dissimilar. *Id.* at 537 (citing *Ruehl*, 500 F.3d at 388 n.17).  Some courts also look to "fairness and procedural considerations." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, Civil Action No. 09-85J, 2011 U.S. Dist. LEXIS 146067, at *11 (W.D. Pa. Dec. 20, 2011) (Bissoon, J.) (citation omitted).

### III.     Discussion

#### A.     Plaintiffs' Evidence

The evidence presented by Plaintiffs in support of their Motion—which is, with limited exceptions discussed below, undisputed by Defendants—is as follows:

Defendants "classified Plaintiffs as 'tipped employees,' paid them a cash wage below $7.25/hr., and took the tip credit against their minimum wage obligations under the PMWA and FLSA." ECF No. 69 at 7 (citing ECF No. 69-2 at 35:18–38:19; ECF No. 26 at 3). Although Defendants also employ "Line/Grill Cooks, Prep Cooks, Greeters/Hosts, Assistant General Managers, and a General Manager" at each restaurant, *id.* (citing ECF No. 69-2 at 32:24–34:14, 51:04–51:08), with a "District Manager" overseeing a group of restaurants in a given area, *see id.* (citing ECF No. 69-2 at 51:09–53:07, 55:04–59:11), "Servers are the only employees for whom Defendants utilize the tip credit as part of their compensation at their Kings Family Restaurants." *Id.* (citing ECF No. 69-2 at 35:18–36:12).

Defendants used "uniform employee handbooks for [their] restaurant employees that applied to all Servers including Plaintiffs." *Id.* (citing ECF Nos. 69-3–69-5; ECF No. 69-2 at 59:12–64:20, 69:16–69:23, 70:08–71:14, 130:24–132:18). Defendants also used a training program "that would make Servers 'interchangeable' and able to work at any of their Kings Family Restaurants because the duties generally are the same for Servers regardless of which location he/she is assigned." *Id.* (citing ECF No. 69-2 at 90:20–91:21, 95:03–95:09, 96:16–96:19; and ECF Nos. 69-6–69-9.

Defendants expected all servers (including Plaintiffs) to perform non-tip-generating side-work, and communicated this expectation "through handbooks, job descriptions, and other universal training manuals." *Id.* at 8 (citing ECF Nos. 69-3–69-9; ECF No. 69-2 at 73:15–74:25,

96:20–101:06, 107:12–107:16, 108:22–110:21, 112:04–114:15; and ECF No. 26 at 3). Side-work tasks lists produced by Defendants "uniformly required Plaintiffs to, inter alia, roll silverware, perform food preparation work, clean the restaurant, and stock/restock condiments and supplies." *Id.* at 9 (citing ECF No. 69-14 and ECF No. 69-2 at 128:17–128:23). Defendants "had a uniform practice of not recording the amount of time Plaintiffs spent performing sidework each day," *id.* (citing ECF No. 69-15 and ECF No. 69-2 at 132:21-133:13, 134:03-134:09) (emphasis omitted), and, as a result, "[w]hen Plaintiffs are performing their sidework and cleaning tasks they are clocked into Defendants' timekeeping system as Servers and are paid a cash wage by Defendants below $7.25/hr." *Id.* (citing ECF No. 69-2 at 132:21–133:13, 134:03–134:09).

Finally, Plaintiffs have also submitted declarations and responses to written discovery from "[s]ixty-three (63) Plaintiffs who worked at more than twenty separate Kings Family Restaurant locations since July 2017" which all assert that they spent more than 20% of their working hours engaged in side-work. *Id.* at 8 (citing ECF Nos. 69-11–69-13). A summary chart of those declarations and discovery responses provided by Plaintiffs shows estimates of time spent on side-work ranging from 25% to 80% of working hours, with the vast majority of those estimates clustered in the range of 30% to 50%. *See* ECF No. 69-11.

### B.  Final Certification is Warranted Here

Based on the foregoing evidence—which, as noted above, Defendants generally do not dispute—the Court finds that, by a preponderance of the evidence, Plaintiffs have satisfied the *Zavala* factors. *See* 691 F.3d at 536–37 (in determining whether final certification is appropriate, district court should consider: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of

employment."). Specifically, although Plaintiffs worked at 20 different restaurants, they all worked the same job, were subject to the same employer policies and requirements, were paid pursuant to the same tip credit wage policy, and experienced similar working conditions in the form of employer-mandated side-work. Moreover, as to Defendants' policies, there is no dispute that Defendants did not separately record the time spent by Plaintiffs performing side-work. Finally, the Plaintiffs who submitted discovery responses or written declarations all estimated that the time they spent on side-work exceeded the 20% threshold, with the majority of their estimates falling within a reasonably narrow range. Against this substantial evidence, which tends to show Plaintiffs were similarly situated, Defendants offer a few arguments in opposition to final certification. None are persuasive.

First, Defendants assert that final certification should be denied because Plaintiffs' evidence does not identify "a single decision, policy, or plan that required servers to perform sidework for more time than is permissible under the FLSA." ECF No. 70 at 7 (citing *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 670 (W.D. Pa. 2011) (Conti, J.)). But the "similarly situated" inquiry does not turn on whether a group of plaintiffs can identify a single, discrete "decision, policy or plan" of their employer, much less one that is facially unlawful. *See Zavala*, 691 F.3d at 538 ("Being similarly situated…means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."). Furthermore, Plaintiffs' evidence does identify a set of common practices, namely, that Defendants (1) used a tip-credit system and paid Plaintiffs a sub-minimum wage; (2) required all Plaintiffs to perform some amount of non-tip-generating side-work; and (3) had a uniform practice of not recording the amount of time Plaintiffs spent performing side-work. "[I]f proved," these common practices "would help demonstrate [the] violation of the FLSA" alleged by Plaintiffs. *Id.*

Next, Defendants assert that "[f]actual discrepancies exist not only between opt-ins at different restaurant locations, but even amongst those who have submitted declarations or interrogatory responses indicating they worked for the same locations. These discrepancies include the frequency of performing sidework tasks and the time spent performing sidework." ECF No. 70 at 9. In support, Defendants point to evidence that different restaurants had different staffing at various times—e.g., that some restaurants had busboys or greeters for certain shifts, or that the number of servers varied shift to shift and location to location—which would affect the amount of side-work a given Plaintiff performed in any given shift, and that Plaintiffs' estimates of the time they spent on side-work varied, from a low of 25% to a high of 80%. *See id.* at 11–15.

The Court, however, is not persuaded that these difference between Plaintiffs' circumstances are great enough to defeat Plaintiffs' Motion. The evidence here shows substantial overlap between the side-work tasks servers were required to perform restaurant to restaurant; indeed, Plaintiffs' evidence includes task-lists from a dozen of Defendants' restaurants setting forth substantially similar sets of side-work duties, both in terms of quantity and variety. *See* ECF No. 69-14. And, while those tasks-lists do not include some of the other non-tip-generating work described by Plaintiffs—e.g., bussing or washing dishes when no busboy or dishwasher was present—Plaintiffs' work circumstances need not be identical for final certification to be appropriate. *See Rood*, 2021 U.S. Dist. LEXIS 132584 at *16. Moreover, apart from three outliers—who provided high-side estimates of their side-work of 60%, 75%, and 80%—the other 60 Plaintiffs who provided discovery responses or declarations all indicated that side-work occupied between 25% and 50% of their time, with more than half (34) providing estimates that either fall in or average to a range of 30% to 40%. Notwithstanding the scattered examples of staffing dissimilarities that Defendants point to, Plaintiffs' evidence, considered in full, if credited

by a jury, would show that Plaintiffs performed similar types of side-work in excess of the amount allowable under the FLSA.

Finally, Defendants maintain that from both a liability and a fairness and efficiency perspective, discrepancies within Plaintiffs' evidence—e.g. one Plaintiff's discovery responses indicated she spent 33% of her time on side-work, while another who worked at the same location estimated her side-work (and that of other servers) at 50%—mean that individual fact-finding, including cross-examination to assess credibility, will be required to determine Defendants' liability as to each Plaintiff. *See* ECF No. 70 at 15–19. The Court disagrees for a few reasons.

First, as other district courts in the Third Circuit have recognized, credibility issues in cases where the evidence otherwise establishes that a group of plaintiffs are similarly situated are generally insufficient to defeat final certification. *See Rivet v. Office Depot, Inc.,* 207 F. Supp. 3d 417, 428 (D.N.J. 2016) ("[I]f [credibility issues] were enough to defeat final certification, FLSA actions could never proceed on a collective basis whenever witness credibility was at issue. Such an extreme view contravenes the well-settled principle that the FLSA should be liberally construed to achieve its purpose"); *Garcia v. Vertical Screen, Inc.*, No. 18-4718, 2022 U.S. Dist. LEXIS 16540, at *14 (E.D. Pa. Jan. 31, 2022) (rejecting argument that credibility presented overwhelming individual defense issue and noting "'requiring the court to apply similar defenses in 254 separate trials as opposed to against plaintiffs within the collective action hardly promotes efficiency.'") (quoting *Andrako v. U.S. Steel Co.*, 788 F. Supp. 2d 372, 382 (W.D. Pa. 2011) (Ambrose, J.)); *Ivanovs v. Bayada Home Health Care, Inc.*, No. 1:17-cv-01742-NLH-AMD, 2021 U.S. Dist. LEXIS 147779, at *15 (D.N.J. Aug. 6, 2021) (rejecting credibility argument because, "[o]n the current record, however, Plaintiffs have demonstrated that despite some minor differences between how each Plaintiff performs his or her job, the preponderance of the evidence shows that overall

9

Defendant treats [plaintiffs] in a uniform way, and [plaintiffs] accordingly perform their jobs in a uniform way."). Moreover, the few examples of potential credibility issues cited by Defendants relate only to an individual Plaintiff's recollections of how much time he or she spent on side-work—an issue that both parties will have to contend with on the basis of representative evidence—but do not touch on the substantial evidence of similarity among the Plaintiffs related to, for example, Defendants' policies and the type of side-work Plaintiffs performed. *See Rivet*, 207 F. Supp. 3d at 428 (noting that "[t]he Court is confident that [defendant] can make its credibility arguments on a collective basis").

Next, Defendants, as Plaintiffs' employers, bore the responsibility under the FLSA to keep track of the amount of time Plaintiffs spent performing tipped and untipped work, which the undisputed evidence here shows they did not do. *See* 29 C.F.R. § 516.28(a)(4)–(5) (requiring employers to maintain records of "[h]ours worked each workday in any occupation in which the employee does not receive tips" and "[h]ours worked each workday in occupations in which the employee receives tips."). Both the Supreme Court and the Third Circuit, relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), have endorsed the use of representative evidence to prove an employer's liability in cases where an employer's records are lacking. *See Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 459 (2016) ("[I]n this case each employee worked in the same facility, did similar work, and was paid under the same policy. As *Mt. Clemens* confirms, under these circumstances the experiences of a subset of employees can be probative as to the experiences of all of them."); *Reich v. Gateway Press*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees.") (collecting cases); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) ("It is not necessary for every single affected employee to testify in order to prove violations or to recoup

back wages. The testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations."). This is because "'[t]he major principle of *Mt. Clemens* [is] that, once [the plaintiff's] prima facie case is made, the burden shifts to the employer to dispute it with precise evidence of hours worked.'" *Chen v. Century Buffet & Rest.*, *Civil Action No. 09-1687 (SRC),* 2012 U.S. Dist. LEXIS 4214, at *19–20 (D.N.J. Jan. 12, 2012) (quoting *Martin*, 949 F.2d at 1298). Moreover, the representative sample presented by Plaintiffs in support of their Motion—consisting of evidence from 63 of 405 total Plaintiffs—is at least as robust as representative samples that other groups of plaintiffs have relied on in other cases. *See* ECF No. 73 at 5 n.6 (collecting cases).

Finally, the Court is not persuaded by Defendants' fairness and efficiency arguments. As the district court in *Garcia* observed,

> [a]lthough litigating these claims as a collective action will undoubtedly involve some measure of individualized determination (as many, if not most, collective actions do), to litigate them separately would be "the worst possible outcome in terms of efficiency" and would "place each opt-in Plaintiff back at square one without the benefit of pooled resources to resolve the common liability questions in this case."

2022 U.S. Dist. LEXIS 16540, at *14 (quoting *Andrako*, 788 F. Supp. 2d at 383). Indeed, on balance, the burden on the courts (and the litigants) of resolving individual issues in this case within the context of a collective action—especially at the present procedural posture, where discovery has already been completed—is far lower than if even a relatively small fraction of Plaintiffs chose to pursue an individual claim following decertification. Even a 10% individual filing rate would spawn some 40 new lawsuits, each requiring some amount of discovery, motions practice, and, if not settled, its own trial.

In short, the Court concludes that Plaintiffs have demonstrated, by a preponderance of the evidence, that they are similarly situated under the FLSA, and that none of Defendants arguments to the contrary are sufficient to defeat Plaintiffs' Motion.

### IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion will be GRANTED.

DATED this 25th day of August 2022.

BY THE COURT:

<u>/s/ Christy Criswell Wiegand</u>
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record